UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO KOZLOWSKI, BRAD WAKEMAN, and KADRI A. EGBEYEMI, the KOZLOWSKI/WAKEMAN/EGBEYEMI PARTNERSHIP and LUXURY HOME SOLUTIONS, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>HUIB STROOMBERG, TRACI SOUTHWELL, STROOMWELL INVESTMENT GROUP, INC., GEORGE STROOMBERG, ANGELIC STROOMBERG, DICK STROOMBERG, RIEMKE KOOLEN, MIHAI ALGIU, and DOES 1-100,<br><br>Defendants. | No.  2:13-cv-00291-JAM-DAD<br><br>**ORDER GRANTING DEFENDANT TRACIE SOUTHWELL'S MOTION TO DISMISS** |

This matter is before the Court on Defendant Traci Southwell's ("Defendant") Motion to Dismiss (Doc. #53) Plaintiffs Marco Kozlowski, et al.'s ("Plaintiffs") First Amended Complaint ("FAC") (Doc. #47) for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). Plaintiffs opposed the motion (Doc. #56) and Defendant replied

1

(Doc. #57).[1]  For the following reasons, Defendant's motion is GRANTED.

I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

This action arises out of Plaintiffs' allegations that co-defendant Stroomwell Investment Group, Inc. ("Stroomwell"), acting through its agent and additional co-defendant Mihai Algiu ("Algiu"), committed fraud when selling Plaintiffs a piece of property located in Cerbere, France (the "Cerbere Property"). Plaintiffs allege that Algiu misrepresented the condition of the property in making the sale.  Plaintiffs concede that the property was represented as unfinished when they agreed to buy it, but they allege that Algiu promised that the construction would be completed by June 1, 2011.  Plaintiffs allegedly sent funds totaling $258,630.24 as a down payment on February 10 and 14, 2011.  Plaintiffs allege that construction on the property was never completed.  Plaintiffs also allege that Algiu represented himself as a sales agent of co-defendant Stroomwell throughout the sale process.

Plaintiffs contend that Algiu, allegedly acting on behalf of Defendant and co-defendants Huib Stroomberg ("Stroomberg"), George Stroomberg, Angelic Stroomberg, Dick Stroomberg, Riemke Koolen, and Stroomwell (collectively "Defendants") attempted to extend the time for completion several times and add new terms to the sales agreement after the down payment was made, but Plaintiffs refused to add additional terms to the agreement.  In

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for November 6, 2013.

1 Spring of 2012, Plaintiffs demanded a return of their deposit.
2 Defendants allegedly refused on July 31, 2012 to refund the
3 deposit and threatened to sue to obtain specific performance of
4 the sales contract.  Plaintiffs then filed the present lawsuit.
5    Plaintiffs also allege that Defendants engaged in an ongoing
6 conspiracy to commit fraud.  Plaintiffs' allegations are based on
7 a 2009 case filed before this Court, Case No. 2:09-CV-00625-JAM-
8 DAD (the "Minne/Lohman case"), wherein plaintiffs Edith Minne and
9 Bonnie Lohman alleged that Defendant along with other co-
10 conspirators misrepresented the state of the Cerbere Property in
11 order to elicit investment funds from them, funds Defendant
12 allegedly conspired to convert to her own use.  That case was
13 voluntarily dismissed by the plaintiffs subject to a stipulation
14 under which Defendant and her alleged co-conspirators were to
15 complete and/or sell the Cerbere Property.
16    Plaintiffs' original complaint against Defendant was
17 dismissed without prejudice because it failed to allege any
18 individual action by Defendant, and Defendant's position as CEO
19 and Secretary of Stroomwell did not support any theories of
20 vicarious liability (Doc. #46).  In the FAC, Plaintiffs now
21 allege that Defendant "participated" in the following three ways:
22 First, on February 21, 2008, Defendant, along with Stroomberg and
23 on behalf of Stroomwell, "placed onto the Internet a personal
24 invitation and advertisement . . . directed to current and
25 potential investors to attend the company's 'Second Annual
26 Presentation on Investment Opportunities.'"  FAC ¶¶ 31-35.
27 Second, on March 8, 2009, Defendant was quoted in a newspaper
28 article with regard to the Minne/Lohman case.  FAC ¶¶ 38-41.

1  Third, Defendant was copied on emails from Algiu to Plaintiffs
2  regarding the Cerbere Property.  FAC ¶¶ 43-52.
3      In this suit, Plaintiffs bring the following claims:
4  1) Civil Racketeer Influenced and Corrupt Organizations ("RICO"),
5  18 U.S.C. § 1962(c); 2) Fraud; 3) Unlawful, Deceptive and Unfair
6  Business Practices, Cal. Bus. & Prof. Code § 17200; 4) Unfair,
7  Deceptive and Misleading Advertising, Cal. Bus. & Prof. Code
8  § 17500.  The Court has jurisdiction over Plaintiffs' federal
9  civil RICO claim pursuant to 28 U.S.C. § 1331 and Plaintiffs'
10 related state claims pursuant to 28 U.S.C. § 1367.
11
12                          II.   OPINION
13     A.   Legal Standard
14     A party may move to dismiss an action for failure to state a
15 claim upon which relief can be granted pursuant to Federal Rule
16 of Civil Procedure 12(b)(6).  To survive a motion to dismiss a
17 plaintiff must plead "enough facts to state a claim to relief
18 that is plausible on its face." Bell Atlantic Corp. v. Twombly,
19 556 U.S. 662, 570 (2007).  In considering a motion to dismiss, a
20 district court must accept all the allegations in the complaint
21 as true and draw all reasonable inferences in favor of the
22 plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),
23 overruled on other grounds by Davis v. Scherer, 468 U.S. 183
24 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  "First, to be
25 entitled to the presumption of truth, allegations in a complaint
26 or counterclaim may not simply recite the elements of a cause of
27 action, but must sufficiently allege underlying facts to give
28 fair notice and enable the opposing party to defend itself

4

effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied, 132 S. Ct. 2101, 182 L. Ed. 2d 882 (U.S. 2012). "Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Id. Assertions that are mere "legal conclusions" are therefore not entitled to the presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Dismissal is appropriate when a plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Department, 901 F.2d 696, 699 (9th Cir. 1990).

Upon granting a motion to dismiss for failure to state a claim, a court has discretion to allow leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a). "Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." Eminence Capital, L.L.C. v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003).

B.   Discussion

   1.   Waiver of Affirmative Defenses

Plaintiffs first argue that Defendant has waived the affirmative defenses of "agent immunity" and "shareholder liability" by not raising them in her answer. Opp. at 3-4. As noted by Defendant, only Stroomwell has filed an answer (Doc. #55) in this case and Defendant herself has not yet filed a responsive pleading. Reply at 3. Therefore, Defendant has not waived any affirmative defenses. See Morrison v. Mahoney, 399

F.3d 1042, 1047 (9th Cir. 2005) (noting that a motion to dismiss is not a responsive pleading under FRCP 15(a)).

### 2. Vicarious Liability

Plaintiffs appear to argue, in part, that Defendant should be held vicariously liable for the actions of Defendant Stroomwell and others. The FAC raises two possible theories of vicarious liability in this case: (1) conspiracy liability, by which Defendant would be held vicariously liable because she conspired with Stroomwell and (2) shareholder liability, by which Defendant would be held liable as a shareholder in Stroomwell. As discussed below, Plaintiffs have failed to allege sufficient facts to support their theories of Defendant's vicarious liability.

#### a. Agent's Immunity Rule

Defendant maintains that she cannot be held vicariously liable for the alleged actions of Stroomwell or her other co-defendants. Mot. at 9. Defendant argues that the "agent-immunity rule" precludes such liability because there are no allegations that Defendant acted outside the scope of her duties to Stroomwell. Id. Plaintiffs respond that Defendant's actions were unlawful and taken to advance her own personal interest, and therefore the agent-immunity rule should not apply. Opp. at 5-10.

The California Supreme Court has determined that "[a]gents and employees of a corporation cannot conspire with their corporate principal or employer where they act in their official capacities on behalf of the corporation and not as individuals for their individual advantage." Applied Equip. Corp. v. Litton

Saudi Arabia Ltd., 7 Cal.4th 503, 525 (1994).  Accordingly, an employee who is acting in her official capacity and not for her individual advantage cannot be held vicariously liable for the corporation's actions.

In the FAC, Plaintiffs alleges that Defendant "participated" individually in the following ways: (1) she published an internet advertisement, along with Stroomberg, on behalf of Stroomwell, (2) she was quoted in a newspaper article with regard to a separate lawsuit against Stroomwell, and (3) she was copied on emails by Algiu to Plaintiffs.  FAC ¶¶ 31-35, 38-41, 43-52.  All of these actions were within the scope of Defendant's employment with Stroomwell, and none of these actions was taken for her individual advantage.  Under the agent-immunity rule, Defendant cannot be held vicariously liable, as a co-conspirator, for Stroomwell's actions.

### b. Shareholder Liability

Defendant next argues that she cannot be held liable as a shareholder in Stroomwell because Plaintiffs have not alleged sufficient facts to justify piercing the corporate veil.  Mot. at 9-10.  Plaintiffs argue that the alter ego doctrine should apply because Stroomwell failed to observe corporate formalities.  Opp. at 10-12.

The alter ego doctrine is one of equity that allows a shareholder of a corporation to be held liable for a corporation's actions, abrogating the usual rule of shareholder immunity. Cambridge Elecs. Corp. v. MGA Elecs., Inc., 227 F.R.D. 313, 325 (C.D. Cal. 2004) (quoting Mesler v. Bragg Management Co., 39 Cal.3d 290, 300 (1985)).  For the doctrine to be invoked,

1  two requirements must be satisfied: (1) there must be "such unity
2  of interest and ownership that the separate personalities of the
3  corporation and the individual no longer exist" and (2) an
4  inequitable result would occur "if the acts are treated as those
5  of the corporation alone." Id.  In making this inquiry, courts
6  generally look for the "undercapitalization of the business,
7  commingling of corporate and personal funds, and failure to
8  observe the corporate formalities." Toho-Towa Co., Ltd. v.
9  Morgan Creek Prods., Inc., 217 Cal.App.4th 1096, 1107 (2013).

10      Plaintiffs have not argued that there was "unity of interest
11 and ownership" between Defendant and Stroomwell.  Furthermore,
12 Plaintiffs have not alleged that Stroomwell was undercapitalized
13 or that Defendant commingled personal and corporate funds.
14 Although Stroomwell's failure to hold annual meetings from 2009
15 to present may indicate a failure to observe corporate
16 formalities, this alone is insufficient justification for
17 piercing the corporate veil. See Folger v. Cottle, 2002 WL 414339
18 (Cal.Ct.App. Mar. 15, 2002).  Therefore, the alter ego doctrine
19 does not apply and Defendant cannot be held liable in her
20 capacity as a shareholder of Defendant Stroomwell.

21      3.   Civil RICO

22     Defendant argues that Plaintiffs' first cause of action – a
23 civil RICO claim – is insufficiently pled under FRCP 9(b) and
24 therefore fails to state a claim.  Mot. at 12.  Defendant
25 contends that Plaintiffs have failed to specifically allege
26 "predicate acts" or "an enterprise engaged in a pattern of
27 racketeering."  Mot. at 13-14. Plaintiffs fail to address this
28 argument in their opposition.  Therefore, as Defendant's motion

8

is unopposed with respect to the civil RICO claim, Plaintiffs' first cause of action against Defendant is DISMISSED.  See Edwards v. Marin Park, Inc., 356 F.3d 1058, 1065-66 (9th Cir. 2004) (holding that FRCP 9(b)'s specific pleading requirement applies to civil RICO claims grounded in fraud).

        4.   Fraud

    Defendant argues that Plaintiff's second cause of action for fraud is insufficiently pled under FRCP 9(b).  Mot. at 7-9.  Plaintiffs argue generally that Defendant's actions constituted fraud.  As noted above, the only allegations pertaining to Defendant individually are that (1) she published an internet advertisement, along with Stroomberg and on behalf of Stroomwell, (2) she was quoted in a newspaper article with regard to a separate lawsuit against Stroomwell, and (3) she was copied on emails by Algiu to Plaintiffs.  FAC ¶¶ 31-35, 38-41, 43-52.  These three actions are the sole bases for Defendant's potential liability, as she is not vicariously liable for the actions of Stroomwell or its agents.

    "The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  Kearns v. Ford Motor Co., 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting Engalla v. Permanente Med. Group, Inc., 15 Cal.4th 951, 974 (1997)).  Under the heightened pleading standard of FRCP 9(b), a plaintiff must also allege the specific circumstances constituting fraud such that the defendant has notice of the actual misconduct.  Id. at

1124.  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." Id. (quoting Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)).

Plaintiffs first argue that Defendant committed fraud by failing to disclose that she is not licensed as a real estate broker under California Business and Professions Code ("B&P") section 10139.  Opp. at 3.  However, Plaintiffs do not explain why B&P section 10139 applies to Defendant.  B&P section 10139 does require that "real estate brokers" be licensed.  However, in relevant part, B&P section 10131 defines a "real estate broker" as

> a person who, for a compensation or in expectation of a compensation . . . does or negotiates to do one or more of the following acts for another or others:
> (a) [s]ells or offers to sell, buys or offers to buy, solicits prospective sellers or purchasers of, solicits or obtains listings of, or negotiates the purchase, sale or exchange of real property or a business opportunity . . .

From the facts alleged by Plaintiffs, Defendant appears to be a private seller rather than a "real estate broker" under B&P section 10131.  Therefore, the licensing requirement of B&P section 10139 does not apply to Defendant.  Moreover, Plaintiffs fail to specifically plead any misrepresentation by Defendant – at no time did Defendant represent to Plaintiffs that she was a licensed real estate broker or induce Plaintiffs to rely on that information.  Nor do Plaintiffs cite any authority which suggests that the mere act of selling property as an unlicensed broker, without more, constitutes fraud.

Plaintiffs also allege that Defendants, collectively, failed to disclose that the Cerbere property was (1) the subject of a

2009 lawsuit, (2) "encumbered by other financial obligations," (3) "currently subject to the control of a court-supervised stipulation," (4) substantially undercapitalized, (5) not capable of completion or delivery by the promised date, and (6) owned by multiple investors. FAC ¶¶ 124-25. However, Plaintiffs fail to specifically attribute these alleged misrepresentations to Defendant individually. Plaintiffs' sole allegation that Defendant posted an internet invitation to a sales presentation does not meet the heightened pleading standard of FRCP 9(b). The elements most conspicuously absent from Plaintiffs' FAC are Defendant's individual "knowledge of falsity" and "intent to defraud." Kearns, 567 F.3d at 1126. Accordingly, Plaintiffs have failed to meet the heightened pleading requirements of FRCP 9(b) and their second cause of action against Defendant is DISMISSED.

    5. <u>Unlawful, Deceptive, and Unfair Business Practices</u>

  Defendants argue that Plaintiffs' third and fourth causes of action must be dismissed because they are grounded in fraud and fail to meet the requirements of FRCP 9(b). Mot. at 10-11. Plaintiffs do not specifically respond to this argument, but their arguments with regard to their fraud claim have been imputed by the Court to their third and fourth causes of action.

  Where a cause of action relies on "a unified fraudulent course of conduct," allegations supporting that cause of action must meet the heightened pleading standard of FRCP 9(b). Kearns, 567 F.3d at 1127. Therefore, FRCP 9(b)'s heightened standard applies to state-law claims for unlawful, deceptive, and unfair

11

business practices in violation of B&P section 17200.  <u>Kearns</u>, 567 F.3d at 1125.  Similarly, when state-law claims for unlawful, deceptive, and misleading advertising, in violation of B&P section 17500, are grounded in fraud, the same pleading standard applies.  <u>See</u> <u>Castro Valley Union 76, Inc. v. Vapor Sys. Technologies, Inc.</u>, 2012 WL 5199458 (N.D. Cal. Oct. 22, 2012) (if the claim "is based on fraud, the allegations of fraudulent conduct alleged in support of plaintiff's § 17500 claim must satisfy the heightened pleading requirements of Rule 9(b)").

As discussed above, Plaintiffs' allegations against Defendant do not meet the requirements of FRCP 9(b).  Therefore, Plaintiffs' third and fourth causes of action against Defendant are DISMISSED.

### 6. Leave to Amend

Generally, the Court will grant leave to amend "with extreme liberality."  <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 712 (9th Cir. 2001).  Nevertheless, the Court "determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility."  <u>Griggs v. Pace Am. Grp., Inc.</u>, 170 F.3d 877, 880 (9th Cir. 1999).  Here, there are indications in both the FAC and Plaintiffs' opposition that granting leave to file another complaint against Defendant is not justified.  In the FAC, Plaintiffs state that they "believe that they are justified to maintain [Defendant] Southwell as a defendant for purposes of discovery."  FAC ¶ 116.  Furthermore, in their opposition, Plaintiffs state that they "believe [Defendant's] actions are fraudulent and are seeking to examine the evidence in

greater detail." Opp. at 3.  As one of the purposes of FRCP 9(b)'s heightened pleading standard is to "deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs,'" it would be improper to permit this fishing expedition to continue.  Kearns, 567 F.3d at 1125.  Therefore, the Court declines to grant Plaintiffs leave to file a second amended complaint against Defendant and the motion to dismiss is GRANTED WITH PREJUDICE. The Court also denies Defendant's request for attorneys' fees and costs (Reply at 6-7) as it has not been properly presented to this Court.

## III.  ORDER

For the reasons set forth above, the Court GRANTS WITH PREJUDICE Defendant's Motion to Dismiss:

IT IS SO ORDERED.

Dated:   December 28, 2013

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE